Argued December 8, 1977, affirmed April 4, 1978

# PERRY & GREER, INC., *Plaintiff,*
## GREER et al, *Respondents,*
### *v.*
# MANNING et al, *Appellants.*
### (No. 74-6224, SC 25113)
### 576 P2d 791

 ─────────

Terence J. Hammons of Hammons, Phillips & Jensen, Salem, argued the cause and filed the briefs for appellants.

Wayne E. Allen, Eugene, argued the cause and filed the brief for respondents.

Before Denecke, Chief Justice, Holman and Howell, Justices, and Richardson, Justice Pro Tempore.

RICHARDSON, J., Pro Tempore.

**RICHARDSON, J.,** Pro Tempore.

Plaintiff Perry & Greer, Inc. brought an action against defendants seeking damages for breach of contract. In the same complaint plaintiffs Greer and Hoyt, as the sole shareholders of plaintiff corporation, alleged two causes of action against defendants. The first cause was for breach of the contract and the second for collection of a dishonored check. The validity and terms of the contract were in dispute and are discussed more fully later in the opinion. Following trial to the court judgment was entered against both defendants on the cause of action respecting the dishonored check and for attorney fees.

Prior to trial defendants moved to have plaintiffs elect whether they would proceed as individuals or as a corporation and whether they would proceed on the cause of action respecting the dishonored check or the underlying agreement. The court delayed ruling on the motion until plaintiffs had completed presentation of their case. Plaintiffs, at that time, elected to proceed as individuals on the dishonored check. Defendants then moved for a nonsuit, which was denied whereupon defendants rested, without putting on any evidence, and moved for a directed verdict on the grounds that the underlying agreement was vague and unenforceable and that plaintiffs did not have standing to sue on the dishonored check because the individual plaintiffs were not the holder or owner of the instrument. The motion for directed verdict was denied.[1]

On appeal defendants contend the motion for directed verdict should have been granted on either of the two grounds specified in the motion. In addition defendants claim attorney fees cannot be assessed against defendant Esther Konop because she had not been given written demand for payment of the check.

---

[1] The nomenclature of the motion is incorrect in light of the fact the matter was tried to the court without a jury. It is more properly a motion for judgment as a matter of law. *See Hendrix v. McKee,* 281 Or 123, 125, 575 P2d 134, n 2 (1978).

[ 27 ]

■ We decline to consider the first ground respecting the enforceability of the underlying agreement for the following reason. On motion of defendants the court required plaintiffs to elect whether they would proceed on the agreement or the dishonored check. When plaintiffs elected to seek recovery on the dishonored check the validity of the obligation insofar as it relates to the check is not an issue in the case.[2]

ORS 73.8020 provides:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation:

"* * * * *

"(b) In any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation."

This provision is unambiguous. Plaintiffs, having elected to sue on the check, may recover if they establish standing, the necessary signatures, presentment, dishonor and demand for payment. To defeat recovery defendants must establish a defense. Defendants chose to rest without presenting evidence of any defense. *See Gaskins v. Duke,* 483 SW2d 499 (Texas 1972); *Humble Oil v. Copley,* 213 Va 449, 192 SE2d 735 (1972). In their answer they admitted the check was made to the two individual plaintiffs, that it was presented for payment and was dishonored, and that notice of dishonor was given to defendant B. J. Manning. The only issues remaining are whether plaintiffs have standing and whether attorney fees can be assessed against defendant Konop.

---

[2]It is unnecessary to decide, and we express no opinion, as to whether plaintiffs may in another proceeding recover the balance due on the contract not covered by the $6,000 check. *See Lamson v. Comm. Credit Corp.,* 187 Colo 382, 531 P2d 966 (1975). We only decide that by electing to sue on the check plaintiffs are not attempting to enforce the agreement and it is not in issue.

We develop the facts of this controversy from admissions in the pleadings and the evidence presented on behalf of plaintiffs. As indicated, defendants presented no evidence. Plaintiffs, either as individuals or as a corporation, entered into an agreement with defendants for the purchase and sale of the business assets, accounts and stock of plaintiff corporation. Although the validity of the contract is in conflict it in essence provided for a sale of the complete business to defendants. The agreed price was a $6,000 lump sum payment and the assumption by defendants of past due bills of the corporation. On April 17, 1974, defendants made the lump sum payment by the $6,000 check which is now in issue. The check was made out to both individual plaintiffs and signed by B. J. Manning as the maker. His signature was directly under the printed notation "POOL SIDE GRAINOLA." The check was postdated to April 26, 1974, and plaintiffs were told it would not be covered until that date, the reason being they were waiting for receipt of money from a third party in California.

Prior to April 26, 1974, defendants contacted plaintiffs to inform them that the money would not be there by the 26th. Plaintiffs made several subsequent inquiries about the money and each time were told the money, although forthcoming, had not arrived. Finally, in the latter part of June 1974, plaintiffs were informed the check would not be honored.

Plaintiffs then transferred the check to Bay Area Crane Hoist, Co., Inc. (Bay Area) with the following endorsement: "Ginny Hoyt David Greer to Bay Area Crane Hoist Co., for funds advanced." David Greer's father was the principal owner of Bay Area. He had assisted in financing the business carried on by plaintiff Perry & Greer, Inc. Bay Area was told by plaintiffs the check would probably not be paid.

Bay Area sent the check for collection to Security Pacific National Bank (Bank) of Oakland, California, with the endorsement "Pay to the order of Security

Pacific National Bank" and "For Deposit Only." The Bank endorsed and sent the check for collection and upon dishonor cancelled its endorsement and physically returned the check to Bay Area without endorsement. Bay Area, as admitted in defendants' answer, physically returned the check to plaintiffs and assigned to plaintiffs all of Bay Area's right, title and interest in the check. Bay Area made no further endorsements on the check when it was given to plaintiffs and plaintiffs did not cancel any endorsements. Plaintiffs made written demand for payment of the check on defendant B. J. Manning.

■ Defendants argue that plaintiffs do not have standing to sue on the check because they are not holders or transferees for value of the instrument. Defendants contend that while Bay Area was a holder prior to negotiation of the check to the Bank it lost this status upon transfer to the Bank by negotiation. When the check was dishonored and returned to Bay Area there was no endorsement to Bay Area and no value given for the transfer and it was therefore not a holder, defendants contend. Since Bay Area was not a holder, the argument continues, it could not confer holder status on plaintiffs by transfer. Additionally, defendants argue that even if Bay Area reacquired status of a holder of the instrument the transfer to plaintiffs was without value and plaintiffs cannot collect the obligation. We disagree.

When Bay Area, as holder and owner of the check, transferred it to the Bank for collection the Bank became Bay Area's agent, ORS 74.2010(1). That section provides: "Unless a contrary intent clearly appears * * *" the collecting bank acts as an agent of the owner of the instrument. This provision conferring prima facie agency status applies regardless of the form of the endorsement. There is nothing in this record to counter the prima facie principal-agency relationship between Bay Area and the Bank.

When the Bank returned the check to Bay Area following dishonor it was a return of the instrument

by an agent to the principal and endorsement by the Bank was unnecessary. By this transfer, Bay Area, having physical possession, reacquired its status as a holder of the check.

Defendants admitted in their answer that the check was transferred by Bay Area to plaintiffs. ORS 73.2010(1) provides:

"Transfer of an instrument vests in the transferee such rights as the transferor has therein * * *."

Since Bay Area was a holder the rights encompassed in this status passed to plaintiffs by the transfer. In *Scheid v. Shields,* 269 Or 236, 524 P2d 1209 (1974), we held a transferee, even though not a holder, could maintain an action on the instrument in his own name under the Uniform Commercial Code. It would follow that plaintiffs, who were transferees from a holder, can maintain an action to enforce payment of the obligation the same as the holder-transferor.

The principle of *Scheid v. Shields, supra,* defendants contend, should be restricted to transferees for value. Since the transfer to plaintiffs was not for value, it is urged, they cannot maintain the action on the check.

The transfers specified in ORS 73.2010 are not limited to transfers for value. An instrument may be transferred by gift and the donee acquires whatever rights the donor had. *See* Legislative Counsel Committee pamphlet on Oregon's Uniform Commercial Code with Comments, at 139 (1962). Transfer for value invokes the status of a holder in due course, ORS 73.3020. As such, a holder in due course can defeat certain defenses which may be raised to enforcement of the obligation, ORS 73.3050.

A transferee need not be a holder in due course to have the rights of a transferee. A transfer of an instrument may be by endorsement making the transferee a holder; by transfer for value, making the transferee a holder in due course; or by transfer

without value or endorsement giving the transferee those rights possessed by the transferor. It is thus not necessary for the status of transferee that the transfer be for value. To follow defendants' line of reasoning would mean a donative transferee could never enforce payment of the instrument; a result we think the Uniform Commercial Code does not intend.

■ Defendants further argue that plaintiffs, not being holders, i.e., possession and transfer by endorsement, ORS 73.2020, or owners of the check, cannot recover under the provisions of ORS 73.3070(2). This section provides:

"When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

We quote from the official comments to ORS 73.2010:

"8. The final clause of subsection (3) of ORS 73.2010 * * * is intended to make it clear that the transferee without indorsement of an order instrument is not a holder and so is not aided by the presumption that he is entitled to recover on the instrument provided in subsection (2) of ORS 73.3070. The terms of the obligation do not run to him, and he must account for his possession of the unindorsed paper by proving the transaction through which he acquired it. Proof of a transfer to him by a holder is proof that he has acquired the rights of a holder and that he is entitled to the presumption." Legislative Counsel Committee pamphlet on Oregon's Uniform Commercial Code at 140.

Plaintiffs acquired the check from Bay Area, which was a holder of the instrument, and thus are entitled to the presumption set out in ORS 73.3070(2). Defendants elected not to establish any of the defenses pleaded and it is thus unnecessary for plaintiffs to establish they were holders in due course, ORS 73.3070(3). We hold plaintiffs were entitled to recover on the check and the motion for directed verdict was properly denied.

■ Finally, defendants allege it was error to assess attorney fees against defendant Konop in the absence

of evidence she received the statutory notice of dishonor. ORS 20.090 requires notice of dishonor 10 days before commencement of the action in order for plaintiff to be entitled to attorney fees on the dishonored check. Defendants admitted B. J. Manning had been given the required notice but denied such notice had been personally given to defendant Konop.

The evidence and admissions in defendants' answer establish defendants were conducting business as a partnership under the name of Pool Side Grainola and that they dealt with plaintiffs pursuant to this relationship. Every partner is an agent of the partnership for the purpose of the business and his execution of an instrument in the course of carrying on the business binds the other partners, ORS 68.210. It is clear from this record that defendant B. J. Manning signed the check on behalf of the partnership.

Respecting notice that an instrument has been dishonored ORS 73.5080(5) states:

"Notice to one partner is notice to each although the firm has been dissolved."

Notice to defendant B. J. Manning, which was admitted, is notice to his copartner defendant Konop.

Affirmed.