WILLIAM F. McGREW, Plaintiff-Appellee and Cross-Appellant, *v.* LARRY MIX *et al.*, Defendants-Appellants.—(Grace Mix, Defendant-Cross-Appellee.)

Fifth District   No. 82—145

Opinion filed January 4, 1983.

Ralph D. Glenn, of Glenn & Logue, of Mattoon, for appellants.

John R. Meyer, of Meyer & Meyer, of Flora, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff, William F. McGrew, commenced this action in the circuit court of Clay County to recover $20,545.18 plus 7% interest on a promissory note executed by defendants, Larry Mix, Sandra Mix and Grace Mix. The trial court, sitting without a jury, entered judgment for plaintiff and against Larry and Sandra Mix in the amount of $27,598.11, and entered judgment in favor of Grace Mix and against plaintiff. Defendants' post-trial motion to vacate judgment or, in the alternative, to modify the judgment was denied, and defendants, Larry Mix and Sandra Mix, now appeal. Plaintiff's cross-appeal against defendant, Grace Mix, has been abandoned.

The material facts of this case are uncontroverted. On March 28, 1973, Larry and Sandra Mix, husband and wife, executed a promissory note payable to the First National Bank of Flora, Illinois. The note was in the amount of $26,200 and was payable in installments of $651.84 per month. Interest on the note was set at 8%. The note was payable on demand, or if not demanded, it was to be paid on March 29, 1977.

Grace Mix, mother of Larry Mix, signed as an accommodation party at his request because the collateral offered as security was insufficient. Subsequent to the execution of the note, plaintiff married Grace Mix on November 11, 1973. After the marriage, Grace Mix in-

formed plaintiff that she had co-signed the note.

In March 1975, defendant, Grace Mix, then Grace McGrew, received a letter from Roger Wells, president of the First National Bank, which advised her that payments on the note were in arrears. The letter suggested that she come in with the other co-makers to discuss the arrearage. From March 18, 1975, the arrearage increased from $5,220.40 to $6,775. Sometime during this period, plaintiff saw the letter sent by Mr. Wells to his wife.

Plaintiff discussed the note with Larry Mix, his stepson, but did not tell him or the other defendants that he intended to pay the note. On June 9, 1975, plaintiff went to the bank and paid $20,313.68 in principal and $213.22 in interest. Roger Wells, president of the bank, marked the note "paid, June 9, 1975, R.W.," and gave the note to plaintiff. Plaintiff took the note home and placed it in a dresser drawer.

On June 26, 1975, defendant, Larry Mix, stated to plaintiff that he learned at the bank that plaintiff had paid the note, and inquired about what arrangements would be made for his payment of the note. Defendant wrote out a check to plaintiff for $300 as a payment on the note. Sometime thereafter, the note was delivered by either plaintiff or his wife to Larry and Sandra Mix. Plaintiff testified that this was done so that they would have the note for bookkeeping purposes.

Defendants, Larry and Sandra Mix, made payments on the note on October 30, 1975—$281.57; December 17, 1975—$513.33; January 27, 1976—$513.33, and February 9, 1976—$1,000. Plaintiff and defendant, Grace Mix, were separated on December 29, 1976, and were divorced on April 23, 1979. After plaintiff and Grace Mix were separated in December 1976, defendant Larry Mix stopped making payments on the note. Plaintiff asked defendant, Larry Mix, for payment of the note and when none was forthcoming, brought this suit.

On appeal, defendants, Larry and Sandra Mix, challenge plaintiff's right to recover on the note under the several theories set forth in the complaint. The primary issue for review, we believe, is whether the plaintiff's payment and receipt of the promissory note entitled him to recover on the note from defendants under the Uniform Commercial Code. This case appears to be one of first impression in this State.

At the outset, we note that the trial court's decision implicitly rests upon the finding that plaintiff's payment of the note did not constitute a gift. This conclusion is well-founded upon the record which discloses that plaintiff and defendant, Larry Mix, discussed the note and that defendant testified that he knew that plaintiff expected him

to pay on it. Plaintiff's adjustment of the interest on the note from 8% to 7%, and defendants' several payments on the note lend additional support to the court's finding of fact.

The evidence further establishes that on June 9, 1975, plaintiff went to the First National Bank and paid the promissory note which defendants had executed. After receiving this payment, Roger Wells, the bank president, stamped the note "paid," put his initials and the date on it and handed it to plaintiff. On the basis of these facts, plaintiff contends that he acquired the bank's rights in the note including the right to demand payment.

In support of his position, plaintiff cites section 3—603(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 3—603(2)) which provides:

> "Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee. (Section 3—201.)"

The rights of a transferee are discussed in section 3—201 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 3—201):

> "Transfer of an instrument vests in the transferee such rights as the transferor has therein ***."

Section 3—603(2) of the Uniform Commercial Code represents a marked departure in the law as it previously had been under the Negotiable Instrument Law. The official comments to that section state that the original sections 171 through 177 of the Negotiable Instrument Law (Ill. Rev. Stat. 1961, ch. 98, pars. 192 through 198) provided for payment of a draft "for honor" after protest. (Ill. Ann. Stat., ch. 26, par. 3—603(2), Uniform Commercial Code Comment, at 398 (Smith-Hurd 1976).) It provided a method by which a third party might intervene to protect the credit of the drawer and at the same time protect his own rights. Under the prior law, a payment for honor in order to operate as such and not as a mere voluntary payment was required to be attested by a notarial act of honor. The drafters of the Restatement of Restitution recognized this rule stating in section 117(2):

> "(2) A person who pays a negotiable bill of exchange which has been protested for nonpayment, declaring that he does so for the honor of a party thereto whom he names and having this attested by a notarial act of honor, is entitled to restitution from the person for whose honor he made payment." Restatement of Restitution sec. 117(2) (1937).

With the elimination of "payment for honor," section 3—603(2)

provides that any person may pay with the consent of the holder. In addition, subsection 2 states that the surrender of the instrument to such person gives him the rights of a transferee. Plaintiff contends that the promissory note was surrendered to him when the bank handed the note to him. Defendants challenge this contention and maintain that surrender did not occur because the note was not endorsed by the bank.

"Surrender" as used in section 3—603(2) is not defined in the Code nor in Illinois case law. In the absence of such definition, defendant concludes that the most logical approach is to assign "surrender" the same meaning as "transfer," a term which is discussed in section 3—201. Section 3—201(3) provides:

> "Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner." (Ill. Rev. Stat. 1981, ch. 26, par. 3—201(3).)

Defendants contend that plaintiff cannot be presumed to be the owner of the note because it lacked the indorsement of the bank as required by section 3—201(3). Furthermore, defendants contend that plaintiff's failure to secure the bank's indorsement is evidence that he lacked the authority to do so. We find both propositions to be without merit.

■■ ■ We believe the word "surrender" should be read in the context of section 3—603. This section permits any person with the consent of the holder to make payment of a negotiable instrument. Upon payment and surrender of the paper, the payor succeeds to the rights of the holder, subject to the limitation found in section 3—201 that one who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course. (Ill. Ann. Stat., ch. 26, par. 3—603, Uniform Commercial Code Comment, at 399 (Smith-Hurd 1976).) Defendants have not set forth any persuasive authority which suggests that the word "surrender" be given a technical meaning which would place an additional limitation upon section 3—603. Consequently, we find that plaintiff acquired the rights of a transferee including the right to demand payment on the note from its makers.

■ Defendants further argue that plaintiff should not be allowed to recover on the promissory note because the note was cancelled and the makers discharged under 3—605. Section 3—605 which governs

discharge states in pertinent part:

"The holder of an instrument may even without consideration discharge any party

(a) in any manner apparent on the face of the instrument or indorsement ***." (Ill. Rev. Stat. 1981, ch. 26, par. 3—605.)

Defendants maintain that the fact that the bank president wrote "paid" on the face of the note and placed his initials, "R.W.," together with the date of payment is evidence that the promissory note was cancelled.

We believe that the bank president's act of marking the note "paid" merely acknowledged receipt of payment from plaintiff and did not extinguish the underlying obligation. Section 3—603(2) would be rendered meaningless if the original payee were permitted to unilaterally discharge the maker upon payment by a third party. The party paying on the note essentially would become a transferee without one of the principal rights of a transferee, that is, the authority to enforce the note according to its original tenor. Accordingly, we find that defendants were not discharged by the bank, and defendants, as makers, remain obligated on the note.

The remaining issues presented on review concern availability of traditional restitutionary principles as grounds for recovery. In count I of the complaint, plaintiff sought recovery under the theory of subrogation maintaining that he paid the note in order to protect his marriage and his wife's health. Although defendants persuasively argue that the doctrine of subrogation is not available to one who voluntarily pays the debt of another, we need not address this issue because of the operation of section 3—603(2) of the Uniform Commercial Code discussed above. Similarly, we need not reach the issue of whether defendants ratified plaintiff's payment of the note and are liable by virtue of a subsequent promise to pay as plaintiff alleged in count III of his complaint.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.