Argued and submitted January 7, affirmed May 1, 1985

JERSTAD et al,
*Respondents,*

*v.*

WARREN et ux,
*Appellants.*

(79-7-124; CA A31867)

697 P2d 1033

Dennis H. Elliott, Portland, argued the cause for appellants. With him on the briefs was Elliott & Freedman, Portland.

Frank Porcelli, Jr., Beaverton, argued the cause for respondents. On the brief were Bradley C. Blyth and Blyth, Solomon & Porcelli, Beaverton.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

This is an action to recover payment made by plaintiff LJA, Inc., on a promissory note which defendants signed as makers, payable to the Oregon Bank. Plaintiff Jerstad, who is president of LJA, Inc.,[1] signed the note as an accommodation party. ORS 73.4150. When defendants defaulted on the note, the bank demanded payment from Jerstad. The bank's demand was satisfied by payment from LJA.

Jerstad then filed this action to recover the payment from defendants, who counterclaimed for an accounting of wages and for stock options in LJA, allegedly due under an employment contract with Jerstad. Jerstad's demurrer to the counterclaim on the ground that LJA was a necessary party to the litigation was overruled. In his answer to the counterclaims, Jerstad again asserted that LJA was a necessary party under ORCP 29 for the adjudication of those claims. Defendants moved for summary judgment on Jerstad's claim on the ground that LJA, not Jerstad, paid the note; therefore, any right to recover belonged to LJA, rather than to Jerstad. That motion was denied; however, during the trial, a motion was allowed substituting LJA for Jerstad as plaintiff on the claim and adding LJA as a defendant on the counterclaim along with Jerstad. When we refer to plaintiff, we refer to LJA.

Trial was to the court, which found in favor of LJA on the claim and for defendants on their counterclaims against Jerstad personally. Separate judgments were entered July 29, 1982, disposing of the claim and the counterclaims. We dismissed the appeal and cross-appeal from those judgments, because there was no final disposition of the counterclaim against LJA and because neither of the judgments complied with ORCP 67B. *Jerstad v. Warren,* 66 Or App 299, 673 P2d 565 (1983). On remand, the trial court entered another separate judgment in favor of LJA on the counterclaim on May 2, 1984. This appeal by defendants is taken from the May 2 judgment, and there is no cross-appeal.

LJA contends that this appeal must also be dismissed, because the errors assigned are not related to the May

---

[1] The initials in LJA., Inc. (hereafter LJA) stand for "Lute Jerstad Adventures."

2, 1984, judgment, but only to the July 29, 1982, judgments, and because the notice of appeal fails to designate accurately what action of the trial court is being appealed. The notice of appeal reads, in part, as follows:

> "Defendants hereby give notice of appeal from the judgment entered in this case on May 2, 1984 by Judge Howard Blanding in the Circuit Court for Clackamas County."

Attached to the notice of appeal are copies of the July 29, 1982, judgments[2] and the May 2, 1984, judgment.

In *Jones v. Tri-State Realty,* 46 Or App 159, 611 P2d 312 (1980), we held that the predecessor to ORCP 67, ORS 18.125, did not require

> "* * * that the several judgments respecting the various parties be summarized in a single judgment order. What is required is that the cause be determined as to all parties or that the requirements of ORS 18.125 be met as to a judgment for fewer than all parties. * * *" 46 Or App at 161.

Defendants have appealed from the judgment that, considered with the two earlier judgments, finally disposed of all claims against all of the parties. It is an appealable judgment. The notice correctly advises the adverse parties that the appeal is taken from that judgment, gives the correct date of the judgment and has a copy of the judgment attached. Defendants met the requirements of ORS 19.029. *See generally Werline v. Webber,* 54 Or App 415, 419, 635 P2d 15 (1981), *rev den* 292 Or 450 (1982).

The fact that defendants failed to designate in the notice of appeal the nonappealable judgments entered in 1982 was not a failure to provide notice that "an appeal is taken from the judgment or some specified part thereof * * *." ORS 19.029(1)(c). *Stahl v. Krasowski,* 281 Or 33, 573 P2d 309 (1978), relied on by plaintiff, is not in point. In that case the notice of appeal designated a nonappealable order rather than a judgment as the basis for appeal, and the court held that a designation of the *judgment* appealed from was a jurisdictional requirement. 281 Or at 39; *see also Ensley v. Fitzwater,*

---

[2] We use the term "judgments" advisedly in describing the documents dated July 29, 1982, because, until judgment was entered on the counterclaim against LJA, those judgments were "subject to revision at any time." ORCP 67B. They *became* final only on May 2, 1984, notwithstanding the fact that they bear an earlier date.

293 Or 158, 695 P2d 1062 (1982). The notice of appeal in this case does not suffer from that defect, and there is no requirement that an appellant specify in the notice of appeal those parts of a judgment on which assignments of error will be based. Errors may be assigned to "any intermediate order involving the merits or necessarily affecting the judgment * * * appealed from * * *." ORS 19.140. Accordingly, plaintiff's motion to dismiss the appeal is denied.

The trial court's findings supporting judgment for LJA on the note are brief:

"I.    Defendants, for value, executed a note, a copy of which is evidenced by Exhibit No. 2, payable to Oregon Bank. Plaintiff Luther G. Jerstad signed the note as accommodation at the bank's request.

"II.    The bank made demand upon Jerstad for payment of the note. LJA, Inc., of which Jerstad was principal owner, paid to the bank the balance due on the note of principal and interest in the amount of $3,256.11 on June 26, 1979. LJA, Inc. has carried this amount as due and owing on its books and has classified the amount as a bad debt.

"III.    The note has been lost. It was not delivered or formally assigned to LJA, Inc. The bank has no record of delivery of the note to the defendants or LJA, Inc."

From those findings, the court concluded that:

"I.    LJA, Inc. shall have judgment against defendant Kenneth Edgar Warren and Maxine Marie Warren in the amount of $3,256.11 plus interest thereon from June 26, 1979, together with costs and reasonable attorney fees to be set by the Court upon submission of proper claim."

Defendants' first two assignments of error involve the single question of whether LJA was entitled to recover on the note. The argument is aptly summarized by defendants:

"A stranger who pays a promissory note acquires rights to it only upon surrender of the note by [the] holder to the stranger-payor. Proper surrender requires a negotiation (indorsement) and delivery to make [the] transferee a holder. Only a holder can enforce the terms of a promissory note. The only exception to this is where the note is lost. Then the owner of the note may sue to enforce it. Ownership need be proved and is established by evidence of indorsement to the purported owner. LJA, Inc. was neither holder nor owner of

the note and therefore cannot enforce its terms. The corporation was not an assignee of the note, which would allow for recovery even if it had not been delivered to it."

Plaintiff contends that it was an accommodation party and therefore has a right of recourse on the instrument under ORS 73.4150(5)[3] and, in the alternative, argues that it is entitled to recover under ORS 73.8040 as the owner of a lost instrument. Although we agree with defendants that LJA was not an accommodation party or a holder in the strict sense, we conclude that it is entitled to recover on the note under ORS 73.8040.

■    The note bears the signature of "Luther G. Jerstad." There is nothing on its face to indicate that Jerstad is the president of LJA or that he signed in a representative capacity on behalf of LJA. The only evidence to the contrary is Jerstad's testimony that it was his intention to bind LJA on the note by his signature. That evidence is insufficient to show that LJA is a party to the instrument. ORS 73.4010; ORS 73.4030; *see also Dalton v. George B. Hatley Co., Inc.,* 634 SW2d 374 (Tex Civ App 1982).

■ ■    The principal problem with defendants' argument, quoted above, is that neither "transfer"under ORS 73.2010 nor "surrender" under ORS 73.6030(2) requires that an instrument be negotiated; therefore, LJA's failure to prove that the note was endorsed by the bank is not fatal to its claim. Although negotiation is one form of transfer, it is not the only one. *See generally Perry & Greer, Inc. v. Manning,* 282 Or 25, 31-32, 576 P2d 791 (1978); *Scheid v. Sheilds,* 269 Or 236, 240, 524 P2d 1209 (1974).

ORS 73.6030(2) provides:

"Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee as provided in ORS 73.2010."

The evidence here shows that payment was made at the request of the bank by LJA, a stranger to the instrument, and

---

[3] ORS 73.4150(5) provides:

"An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

that the note was "surrendered" to LJA by the bank. At trial, the bank's loan officer involved with the note testified that the bank no longer had the note and that, although he did not know what had happened to it, in the normal course of the bank's business it would have been sent to LJA, which made payment. Under OEC 311(1)(m), the trial court was entitled to presume that "the ordinary course of business has been followed." That presumption imposed on defendants the burden of proving that the note was not sent to LJA. OEC 308. No such evidence was presented. Thus LJA acquired "the rights of a transferee" under ORS 73.6030(2).

ORS 73.2010[4] spells out the rights of a transferee. It provides that the transfer of a negotiable instrument vests in the transferee the same rights that the transferor had in the instrument. Furthermore, when the transfer is for value, the transferee is given the specifically enforceable right to the unqualified indorsement of the transferor unless "otherwise agreed." ORS 73.2010(3). In this case, the bank, as the payee, was a holder in due course. ORS 73.3020. On surrender of the note to LJA for value, the rights of the bank as a holder in due course vested in LJA. That is true, even though LJA could not be a holder in its own right because it did not have possession of the instrument. *See* ORS 71.2010(20).

ORS 73.2010(3) does provide that "[n]egotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner." Defendants argue that, because plaintiff failed to prove when, if ever, the indorsement was made, it cannot be the owner of the instrument and therefore cannot recover under ORS

---

[4] ORS 73.2010 provides:

"(1)   Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from later holder in due course.

"(2)   A transfer of a security interest in an instrument vests the foregoing rights in the transferee to the extent of the interest transferred.

"(3)   Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner."

73.8040. Again, defendants erroneously assume that the only way to transfer rights in a negotiable instrument is by negotiating it. However, the Legislative Counsel Committee pamphlet on Oregon's Uniform Commercial Code with Comments, at 140-41 (1962), states that, if a transferee of unendorsed order paper proves the transaction through which he acquires it, and proves that the transaction was a transfer from a holder, the transferee acquires the rights of a holder, even though the instrument is not negotiated to the transferee. *See Perry & Greery, Inc. v. Manning, supra; see also McGrew v. Mix,* 112 Ill App 3d 14, 445 NE2d 30 (1983); *Dalton v. George B. Hatley Co., Inc., supra.*

ORS 73.8040 provides:

> "The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument."

The term "owner" is not defined in the Uniform Commercial Code. However, we conclude that, when a negotiable instrument is surrendered to a person as provided in ORS 73.6030(2) and when that person is vested with the rights of a holder as provided in ORS 73.2010, that person is the "owner" of the instrument for the purposes of ORS 73.8040. It follows that LJA is the owner of the promissory note and may enforce its terms against defendants. Because plaintiff has satisfied the requirements of ORS 73.8040, the trial court did not err in permitting plaintiff to recover on the note.[5]

For the same reasons, it is also entitled to attorney fees. The note provides[6] that the holder is entitled to attorney

---

[5] Defendants did not ask the court to require plaintiff to post an indemnity bond in case the instrument later turns up in the hands of a holder, and the court did not require a bond to be posted, although it had discretion to do so. ORS 73.8040.

[6] The note provided, in pertinent part:

> "* * * In the event of default, each of the undersigned agrees to pay all costs of collection and, if this note is placed in the hands of an attorney for collection, the undersigned promises and agrees to pay the reasonable collection costs of the holder hereof; and if suit or action is filed hereon, also promises to pay (1) holder's reasonable attorney's fees to be fixed by the trial court and (2) if any appeal is taken from any decision of the trial court, such further sum as may be fixed by the

fees if legal action is necessary to collect on the note. Although LJA is not the holder in the strict sense, it has the rights of a holder and therefore comes within the note's provision for attorney fees. The amount awarded is supported by the record.[7]

Affirmed.

---

appellate court, as the holder's reasonable attorney's fees in the appellate court."

[7] At the close of plaintiff's case-in-chief the court allowed a motion to amend the pleadings to conform to the proof and substituted LJA for Jerstad as plaintiff in the action on the note. Because defendants were not the prevailing party in the action on the note, they were not entitled to attorney fees.