In re Miles Kearny **FRANKLIN &**
**Heather D. Franklin, Debtors.**

**Miles Kearny Franklin & Heather**
**D. Franklin, Plaintiffs,**

**v.**

**Kwik Cash of Martin, Defendant.**

**Bankruptcy No. 00–11805.**
**Adversary No. 00–5222.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Nov. 1, 2000.

7. The $600.00 paid by Ledbetter toward his loans shall not be credited to the nondischargeable debt.

Gerald Ketchum, Dyersburg, TN, for Debtors.

Bradley Sigler, Jackson, TN, for Kwik Cash of Martin.

Ted Hunderup, Jackson TN, for Chapter 13 Trustee.

Tim Ivey, Jackson, TN, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER RE COMPLAINT FOR TURNOVER OF MONEY FROM A CHECK LOAN FROM KWIK CASH OF MARTIN

G. HARVEY BOSWELL, Bankruptcy Judge.

In this case, the debtor used a deferred presentment service provider to obtain a cash advance in exchange for a personal check. At issue in the case is (1) whether or not the post-petition cashing of the check by the deferred presentment service provider falls within § 362(b)(11)'s exception to the automatic stay, and (2) whether or not the debtors can recover the money Kwik Cash received when the debtor's bank honored the check. The Court conducted a trial in this matter on October 5, 2000. FED. R. BANKR. P. 7001. Pursuant to 28 U.S.C. § 157(b)(2), this is a core proceeding. After reviewing the testimony from the trial and the record as a whole, the Court makes the following findings of facts and conclusions of law. FED. R. BANKR. P. 7052.

## I.  FINDINGS OF FACT

The following facts were stipulated to by the parties at the trial on October 5th. Miles Kearny Franklin ("Franklin") entered into a deferred presentment service agreement ("agreement") with Kwik Cash of Martin ("Kwik Cash") on May 8, 2000. Pursuant to that agreement, Franklin gave Kwik Cash a check in the amount of $230.00.  The check was dated May 8, 2000.  In return for presentment of the check, Franklin received a loan in the amount of $200.  According to the terms of the agreement, Kwik Cash would deposit Franklin's May 8th check on May 22, 2000.

Franklin filed a petition for chapter 13 bankruptcy relief on May 23, 2000.  According to the statements made by Franklin's attorney at the trial, Franklin notified Kwik Cash on May 22, 2000, that he would be filing bankruptcy the next day.  No proof was introduced as to whether or not Franklin informed his bank, First Citizens, of the bankruptcy filing.

Despite being informed of the future filing, Kwik Cash deposited Franklin's check on May 22, 2000.  First Citizens, received this check on May 25, 2000, and rejected it for insufficient funds.  The check was again presented to First Citizens for payment on June 1, 2000, at which time the check cleared.  Kwik Cash contends that their presentment of the debtor's check after the filing of the bankruptcy falls within the "negotiable instrument" exception to the automatic stay and, therefore, is not recoverable by the debtor.

## II.  CONCLUSIONS OF LAW[1]

■ Subsection 362(b)(11) of the Bankruptcy Code provides that:

(b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—

. . .

(11) under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such instrument.

11 U.S.C. § 362(b)(11).  In Tennessee, a "negotiable instrument" is defined as:

[A]n unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time;  and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, . . .

T.C.A. § 47–3–104(a).  "[A] personal check generally qualifies as a negotiable instrument."  *EZ Cash v. Brigance (In re Brigance)*, 234 B.R. 401, 405 (W.D.Tenn.1999) (citing T.C.A. § 47–3–104);  *Drinkard v. Jennings*, 582 S.W.2d 387, 390 (Tenn.Ct. App.1978) ("Section 47–3–104, T.C.A. provides that the form of negotiable instruments may be a draft, or a check, or a certificate of deposit, and defines a check as a negotiable instrument under the statute.")

■ In the case at bar, it is clear that the check Franklin tendered to Kwik Cash on May 8, 2000, is a negotiable instrument within the meaning of both the Bankruptcy Code and the T.C.A.  It is also clear that Kwik Cash did not violate the § 362 automatic stay when it presented Franklin's check to First Citizens on May 22nd and June 1st.

---

1.  Although the debtors styled the complaint in the instant adversary proceeding as a "Complaint for Turnover," the Court feels that the case is more properly addressed as a "Complaint for Avoidance."  As a result, the Court hereby amends the complaint to read "Complaint for Avoidance of Transfer of Money from a Check Loan from Kwik Cash of Martin."

■ Despite this conclusion, the Court's inquiry in this case is not complete. "[E]xcepting the presentment of negotiable instruments from the automatic stay and permitting the innocent transfer of estate money does not mean that estate money received postpetition may be retained." *Wittman v. State Farm Life Insurance Co., Inc. (In re Mills)*, 167 B.R. 663, 664 (Bankr.D.Kan.1994), *aff'd*, 176 B.R. 924 (D.Kan.1994). What the Court must now decide is whether or not Kwik Cash is entitled to retain the $230 they received when First Citizens honored Franklin's check on June 1, 2000.

■ Section 549(a) of the Bankruptcy Code provides that the trustee[2] may avoid unauthorized post-petition transfers of property of the estate. 11 U.S.C. § 549(a)(1) and (2)(B). Checking account balances become "property of the estate" once a bankruptcy petition is filed. 11 U.S.C. § 541(a). In the case of *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), the United States Supreme Court held that "[f]or the purposes of payment by ordinary check, … a 'transfer' as defined by § 101(54) [of the Bankruptcy Code] occurs on the date of honor, and not before." *Id.* at 400, 112 S.Ct. 1386. "[T]he payment of checks presented post-petition constitutes a 'transfer' of property of the estate and if this transfer is not authorized by the Bankruptcy Code it may be set aside pursuant to 11 U.S.C. § 549." *In re Hoffman*, 51 B.R. 42, 46 (Bankr.W.D.Ark.1985).

■ In the case at bar, when Franklin filed his chapter 13 petition on May 23, 2000, his First Citizens' checking account became "property of the estate" and the bank became obliged to turn over the account balance to the trustee. 11 U.S.C. § 541(a); 11 U.S.C. § 542; *Mills*, 167 B.R. at 664. Additionally, when First Citizens

honored the debtor's May 8th check on June 1, 2000, a post-petition transfer of "property of the estate" occurred.

■ Although Franklin's checking account balance became property of the estate once his chapter 13 petition was filed, First Citizens is not liable for turning over the money to Kwik Cash:

> The fact that § 542(c) allows a financial institution without notice of the bankruptcy filing to honor checks postpetition with impunity is simply a recognition of the commercial realities and competing statutory requirements imposed on financial institutions. Likewise, the fact that presentment of negotiable instruments is excepted from the automatic stay by § 362(b)(11) is probably such a recognition. The Court assumes that the presentment exclusion was intended to protect intermediate institutions in the check-clearing process, who have no real connection with the maker-debtors but must present their checks to the next institution in the banking chain, from stay violation claims that would impose on them the impossible task of ascertaining the bankruptcy status of the numerous faceless, unknown people whose checks and other negotiable instruments flow through the banking collections system.

11 U.S.C. § 542(c); *Mills*, 167 B.R. at 664. Despite this fact, Kwik Cash is not entitled to retain the proceeds of the May 8th check:

> The protection provided by § 542(c) is expressly limited to permitting a financial institution unaware of the bankruptcy to transfer estate property "with the same effect as to the entity making such transfer or payment as if the case" had

---

2. Section 522(h) gives debtors the power to avoid post-petition transfers of property pursuant to § 549 if "such transfer is avoidable by the trustee" and "the trustee does not attempt to avoid such transfer." 11 U.S.C. § 522(h)(1) and (2). Because the trustee has not attempted to avoid the transfer to Kwik Cash in the five months since the case was filed, the Court finds that the debtors may properly bring such an action.

not been filed; it says nothing about the recipient of the transfer.

*Id.*

 When First Citizens transferred the $230 in cash to Kwik Cash it effected a post-petition transfer of property of the estate. Pursuant to § 549 of the Bankruptcy Code, this transfer may be avoided and the debtor may recover this money. This recovery, however, does not leave Kwik Cash without recourse for collecting upon their loan agreement with the debtor. Like all creditors in a chapter 13 case, Kwik Cash is entitled to file an unsecured proof of claim.[3]

### III. ORDER

It is therefore **ORDERED** that:

1. The "Complaint for Turnover of Money from a Check Loan from Kwik Cash of Martin" is **AMENDED TO:** "Complaint for Avoidance of Post–Petition Transfer."

2. The "Complaint for Avoidance of Post–Petition Transfer" is **GRANTED.** The Debtors are entitled to a judgment against Kwik Cash in the amount of $230.00.

3. Kwik Cash shall be allowed to file an unsecured claim against the debtors in the amount of $230.00.

**IT IS SO ORDERED.**

---

**3.** *In re Brigance,* 219 B.R. 486 (Bankr. W.D.Tenn.1998) (While it is clear that a negotiable instrument may be taken as security for an obligation (see, Tenn.Code Ann. § 47–9–305), a negotiable instrument cannot serve as security for the very obligation it is intended to pay. "Collateral" literally means "by the side." Black's Law Dictionary 261 (6th ed.1990). "Collateral is additional security for performance of principal obligation, or that which is by the side, and not in direct line." Id.)